Jennifer Rust Murray, OSB #100389
Email: jmurray@terrellmarshall.com
Beth E. Terrell
Email: bterrell@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603

Frank S. Hedin
Email: fhedin@hedinhall.com
David W. Hall
Email: dhall@hedinhall.com
HEDIN HALL LLP
1395 Brickell Ave, Ste. 900
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| AMANDA LUNDBOM, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | (JURY TRIAL DEMANDED) |
| SCHWAN'S HOME SERVICE, INC.; and SCHWAN'S COMPANY, | |
| Defendants. | |

Plaintiff Amanda Lundbom, individually and on behalf of all others similarly situated,

complains and alleges as follows based on personal knowledge as to herself, on the investigation

of her counsel, and on information and belief as to all other matters:

CLASS ACTION COMPLAINT - 1

## NATURE OF ACTION

1.      Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Schwan's Home Service, Inc. and Schwan's Company (together "Defendant") in transmitting unsolicited, autodialed SMS text message advertisements to her cellular telephone and the cellular telephones of numerous other consumers across the country, in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## JURISDICTION AND VENUE

2.      The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3.      Personal jurisdiction and venue are proper in this district because Plaintiff's claims arose in substantial part in this district. Defendant directed TCPA-violative text message advertisements into this district by transmitting its messages to a cellular telephone number (assigned to Plaintiff) bearing an area code (971) corresponding to a geographic location in this district. Plaintiff received Defendant's unsolicited, autodialed text messages on her cellular device while physically present in this district. Venue is also proper in this district because Plaintiff resides in this district and Defendant conducts substantial business in this district.

## PARTIES

4.      Plaintiff is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(39) and a citizen and resident of Portland, Oregon.

5.      Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39). Defendant maintains its corporate headquarters in Marshall, MN.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6.      In 1991, Congress enacted the TCPA to address consumer complaints regarding certain abusive telemarketing practices. The TCPA prohibits, inter alia, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a

CLASS ACTION COMPLAINT - 2

wireless number absent an emergency or the "prior express consent" of the party called. And in

the case of "advertisements" or "telemarketing" calls or texts, as defined by applicable

regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party to initiate

such a call or text via an autodialer.

7.     Even in the face of the TCPA, automated and telemarketing calls thrived,

prompting the U.S. Federal Trade Commission to enact the National Do Not Call Registry

("DNC List" or "Do Not Call List") pursuant to the Do-Not-Call Implementation Act of 2003, 15

U.S.C. § 6101 et. seq. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act*

*of 1991*, 18 FCC Rcd. 14014, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003). Registration

for the DNC List began on June 27, 2003 and enforcement started on October 1, 2003.

8.     The TCPA prohibits companies from initiating telephone solicitations, via phone

call or text message, to any number registered on the DNC List. *See* 47 C.F.R. § 64.1200(c)(2).

9.     Even after implementation of the DNC List, automated telemarketing continues to

plague American cellular phone subscribers. "Since 2009, the FTC has seen a significant

increase in the number of illegal sales calls . . . . Internet powered phone systems make it cheap

and easy for scammers to make illegal calls from anywhere in the world, and to display fake

caller ID information, which helps them hide from law enforcement."[1]

10.     Additionally, the TCPA prohibits companies from making calls or sending texts

to non-business phone numbers before 8 a.m. and after 9 p.m. *See* 47 C.F.R. § 64.1200(c)(1).

11.     According to findings by the Federal Communication Commission ("FCC"),

which is vested with authority to issue regulations implementing the TCPA, autodialed calls and

texts are prohibited because such transmissions are a greater nuisance and invasion of privacy

---

[1]     National Do Not Call Registry, Federal Trade Commission, *available at*
https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (last accessed
December 9, 2018).

than live solicitation calls and receiving and addressing such calls and texts can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

12.    One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds — from coupons to phishing schemes — sent directly to user's cell phones."[2]

13.    SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text messages are received virtually anywhere in the world.

14.    Unlike conventional advertisements, SMS message advertisements can actually cost recipients money because wireless phone users must pay their wireless providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

15.    Moreover, the transmission of an SMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

16.    Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (971) ***-3075 (the "3075 Number"). The 3075 Number is, and at all times

---

[2]    Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited April 6, 2018).

mentioned herein was, assigned to cellular telephone service as specified in 47 U.S.C. §

227(b)(1)(A)(iii).  Plaintiff's 3075 Number is, and at all times mentioned herein was, listed on

the national DNC List.

17.     Between in or about July 2018 through November 2018, and at all hours of the

day, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or

intermediaries, numerous SMS and/or MMS text message advertisements to the 3075 Number

without Plaintiff's "prior express written consent."

18.     The SMS text message advertisements sent by Defendant to the 3075 Number and

to the telephone numbers of the members of the proposed Classes defined below originated from

the telephone numbers 89579 and +89579, which are five-digit short codes that were leased by

Defendant or Defendant's agent(s) or affiliate(s) and used for operating Defendant's text

message marketing program.

19.     Recent examples of the messages Plaintiff received from Defendant are depicted

in the screenshots below, which were extracted from Plaintiff's cellular device:

 

20.    Defendant frequently transmitted the same message to the 3075 Number multiple times on the same day, including from both the short code 89579 and the short code +89579. For example, on July 31, 2018, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, approximately forty (40) text message advertisements to the 3075 Number without Plaintiff's "prior express written consent."  A video captured from Plaintiff's cellular device showing Defendant's incessant messages to the 3075 Number on July 31, 2018 is viewable below:



21.    Defendant transmitted its text message solicitations to Plaintiff and others similarly situated at all times of day, including before 8:00 a.m. and after 9:00 p.m. in the recipients' time zones.

22.    For example, and without limitation, Defendant transmitted text message solicitations to the 3075 Number on May 7, 2018 at 7:16 a.m., on May 8, 2018 at 7:35 a.m., and on June 20, 2018 at 7:06 a.m., as shown below:



23.    The hyperlinked http://m.schwn.us/* URLs in the text messages transmitted by Defendant to the 3075 Number and to the unnamed Class members' numbers re-direct to Schwans.com, which is a website operated and maintained by Defendant where Defendant offers goods and services for sale for profit.

24.    Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives a text message sent to the 3075 Number, each unsolicited text message that Defendant transmitted to the 3075 Number invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion. Plaintiff became distracted and aggravated as a result of receiving each of Defendant's text messages, which came at all hours of the day.

25.     Defendant has inundated numerous other consumers with its text message spam as well, also at all hours, as shown by the following sampling of complaints posted to Twitter:



26.     All of the complained of text messages sent by Defendant to the 3075 Number and to the numbers assigned to members of the putative Classes defined below constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4), "telemarketing" as defined by 47 C.F.R. § 64.1200(f)(12) & *id.* § 64.1200(a)(2), and "advertisements" as defined by 47 C.F.R. § 64.1200(f)(1), & *id.* § 64.1200(a)(2). This is because Defendant sent the text messages to market and advertise the commercial availability of its services and goods, for the purpose of selling such goods to Plaintiff and the other members of the proposed Classes for profit.

27.     All of the complained of text messages sent by Defendant to the 3075 Number and to the numbers assigned to members of the putative Classes were calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i) and 47 C.F.R. § 64.1200.

28.     All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to the 3075 Number and to the numbers assigned to members of the putative Classes occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

29.     Specifically, Defendant utilized an "automated telephone dialing system" to transmit the aforementioned text messages to the 3075 Number and to the numbers assigned to

members of the putative Classes because such messages were sent from short codes used to message consumers *en masse*; because Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention.  And indeed, Defendant transmitted the text messages at issue in this case to Plaintiff and all other proposed class members in an automated fashion and without human intervention, with hardware and software that stores, produces and dials random or sequential numbers and/or receives and stores lists of telephone numbers.

30.     Neither Plaintiff nor the other members of the proposed Classes defined below provided their "prior express written consent" allowing Defendant or any affiliate, subsidiary, or agent of Defendant to transmit autodialed text message advertisements to the 3075 Number or to any of the other class members' mobile telephone numbers by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200.

31.     The rules set forth in paragraph (c) and (d) of 47 C.F.R. § 64.1200 are applicable to the Defendant because the text messages it sent from its short codes were telephone solicitations to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991." 47 C.F.R. § 64.1200(e).

32.     Whether or not Defendant's text messages to Plaintiff and others similarly situated were sent via ATDS, the unsolicited text messages were sent pursuant to a common telemarketing scheme for which the Defendant, or any agent or intermediary acting on its behalf,

did not obtain the necessary consent required by, and thus violated, the telemarketing and time-of-day telephone solicitation restrictions of the TCPA and 47 C.F.R. § 64.1200(c)-(e).

33.     Whether or not Defendant's text messages to Plaintiff and others similarly situated were sent via ATDS, the unsolicited text messages were sent pursuant to a common telemarketing scheme for which the Defendant, or any agent or intermediary acting on its behalf, did not comply with, and thus violated, the telemarketing and DNC List restrictions of the TCPA and the telephone solicitation restrictions in 47 C.F.R. § 64.1200(c)-(e).

34.     Defendant transmitted more than one text message advertisement over a 12-month period to Plaintiff's 3075 Number and to the cellular telephone numbers of the other members of the proposed After-Hours Class defined below outside of the permitted call times, that is, prior to 8:00 a.m. and after 9:00 p.m., in violation of the TCPA and the regulations set forth in 47 C.F.R. § 64.1200(c)(1).

35.     Defendant transmitted more than one text message advertisement over a 12-month period to Plaintiff's 3075 Number and to the cellular telephone numbers of the other members of the proposed DNC List Class defined below despite the fact that such numbers had been registered on the DNC List for greater than 30 days, in violation of the TCPA and the regulations set forth in 47 C.F.R. § 64.1200(c)(2).

## **CLASS ALLEGATIONS**

36.     "ATDS Class" Definition. Plaintiff brings this civil class action pursuant to Fed. R. Civ. P. 23 on behalf of herself individually and as a representative of the following class of persons (the "ATDS Class") entitled to statutory damages under the federal TCPA:

> All persons in the United States who, during the four (4) years preceding the filing of this Class Action Complaint through the date on which class certification is granted, received one or more text message promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of

Defendant, without having provided prior express written consent
to Defendant to be sent such message(s).

37.     "After-Hours Class" Definition.  Additionally, Plaintiff brings this civil class

action pursuant to Fed. R. Civ. P. 23 on behalf of herself individually and as a representative of

the following class of persons (the "After-Hours Class") entitled to statutory damages under the

federal TCPA:

> All persons in the United States who, within any 12-month period
> during the four (4) years preceding the filing of this Class Action
> Complaint through the date on which class certification is granted,
> received more than one text message promoting the sale of
> Defendant's goods or services sent by Defendant or an affiliate,
> subsidiary, or agent of Defendant before 8:00 a.m. and after 9:00
> p.m. in the recipient's time zone.

38.     "DNC List Class" Definition.  Additionally, Plaintiff brings this civil class action

pursuant to Fed. R. Civ. P. 23 on behalf of herself individually and as a representative of the

following class of persons (the "DNC List Class") entitled to statutory damages under the federal

TCPA:

> All persons in the United States who, within any 12-month period
> during the four (4) years preceding the filing of this Class Action
> Complaint through the date on which class certification is granted,
> received more than one text message promoting the sale of
> Defendant's goods or services sent by Defendant or an affiliate,
> subsidiary, or agent of Defendant more than 30 days after
> registering their telephone number on the National Do-Not-Call
> Registry.

39.     The "ATDS Class", the "After-Hours Class", and the "DNC List Class" are at

times herein collectively referred to as the "Classes."

40.     Defendant, its employees, and agents are excluded from the Classes.

41.     Plaintiff reserves the right to modify the definition of the Classes (or add one or

more subclasses) after further discovery.

42.     Plaintiff and all members of the Classes have been impacted and harmed by the

acts of Defendant or its affiliates or subsidiaries.

43.     This Class Action Complaint seeks injunctive relief and monetary damages on behalf of Plaintiff and the members of each of the two Classes.

44.     This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). The ATDS Class, the After-Hours Class, and the DNC List Class each satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

45.     Upon application by Plaintiff's counsel for certification of the ATDS Class, the After-Hours Class, and the DNC List Class, the Court may also be requested to utilize and certify one or more additional subclass in the interests of manageability, justice, or judicial economy.

46.     Numerosity. A substantial number of persons comprise each of the Classes, which are each believed to consist of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the ATDS Class, of the After-Hours Class, or of the DNC List Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

47.     Typicality. While residing in the United States, Plaintiff received at least one text message from Defendant from a short code, without having provided her prior express written consent to Defendant. Additionally, while residing in the United States, Plaintiff received within a 12-month period more than one text message sent by Defendant or an affiliate, subsidiary, or agent of Defendant before 8:00 a.m. or after 9:00 p.m. in Plaintiff's time zone. Consequently, the claims of Plaintiff are typical of the claims of the members of each of the Classes, and Plaintiff's interest is consistent with and not antagonistic to those of the other members of either of the Classes she seeks to represent. Plaintiff and all members of the ATDS Class have been impacted

by, and face continuing harm arising out of, Defendant's transmission of autodialed text messages containing advertisements and telemarketing material offering for sale Defendant's goods and services for profit. Plaintiff and all members of the After-Hours Class have been impacted by, and face continuing harm arising out of, Defendant's transmission of text messages before 8:00 a.m. or after 9:00 p.m. Plaintiff and all members of the DNC List Class have been impacted by, and face continuing harm arising out of, Defendant's transmission of text messages to telephone numbers registered on the national DNC List.

48.     _Adequacy_. Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Classes, and is able to fairly and adequately represent and protect the interests of the Classes. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional representatives or assert additional claims on behalf of either or both Classes, as well as to add one or more class(es) or sub-class(es).

49.     _Competency of Class Counsel_. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action.  Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other state and federal data privacy and consumer protection statutes.

50.     _Commonality and Predominance_. There are well-defined common questions of fact and law that exist as to all members of the ATDS Class which predominate over any questions affecting only individual members of the ATDS Class. These common legal and factual questions, which do not vary from class member to class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

a.      Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

b.      Whether such text messages were sent using an "automatic telephone dialing system";

c.      Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d.      Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

51.     There are well-defined common questions of fact and law that exist as to all members of the After-Hours Class which predominate over any questions affecting only individual members of the After-Hours Class. These common legal and factual questions, which do not vary from class member to class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

a.      Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted, within a 12-month period, more than one text message to the cellular telephones of Plaintiff and Class members before 8:00 a.m. and after 9:00 p.m.;

b.      Whether such after-hours text messages constituted "telephone solicitations" within the meaning of 47 C.F.R. § 64.1200(c);

c.      Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

52.     There are well-defined common questions of fact and law that exist as to all members of the DNC List Class which predominate over any questions affecting only individual members of the DNC List Class. These common legal and factual questions, which do not vary from class member to class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

a.     Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted, within a 12-month period, more than one text message to the cellular telephones of Plaintiff and Class members despite such numbers having been registered for more than 30 days on the DNC List;

b.     Whether such after-hours text messages constituted "telephone solicitations" within the meaning of 47 C.F.R. § 64.1200(c);

c.     Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

53.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of either of the Classes is impracticable. Even if every member of the ATDS Class, the After-Hours Class, and the DNC List Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of each of the Classes. Plaintiff

anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of the members of the Classes in individually controlling the prosecution of separate claims is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the members of the Classes can be readily located and notified of this class action through Defendant's text message transmission records and, if necessary, the records of cellular telephone providers.

54.    Additionally, the prosecution of separate actions by individual members of either of the Classes may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty members of either of the Classes to protect their interests. The prosecution of individual actions members of either of the Classes could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

55.    Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to both of the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect each of the Classes appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of the TCPA, 47 U.S.C. § 227(b)(3) & 47 U.S.C. § 227(b)(1)(A)**
**(On Behalf of Plaintiff and the ATDS Class Members Against Defendant)**

56.    Plaintiff incorporates by reference paragraphs 1-55 as if fully stated herein.

CLASS ACTION COMPLAINT - 16

57.     Plaintiff and each member of the ATDS Class received at least one text message from Defendant that promoted the sale of Defendant's goods or services and was sent using an automatic telephone dialing system. Each such text message constituted "advertising" or "telemarketing" material within the meaning of the TCPA and its implementing regulations. Neither Plaintiff not any other member of the ATDS Class provided Defendant prior express written consent to receive such text messages.

58.     Defendant's use of an automatic telephone dialing system to transmit text message advertisements to telephone numbers assigned to cellular telephone service, including to Plaintiff's 3075 Number and the numbers of all members of the proposed ATDS Class, absent the requisite "prior express written consent," as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(b)(1)(A).

59.     As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff and all ATDS Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

60.     As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff and all ATDS Class members are also entitled to, and do seek, an award of statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

## SECOND CLAIM FOR RELIEF

### Violation of the TCPA, 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(1)
### (On Behalf of Plaintiff and the After-Hours Class Members Against Defendant)

61.     Plaintiff incorporates by reference paragraphs 1-55 as if fully stated herein.

62.     Plaintiff and each member of the After-Hours Class received, within a 12-month period, more than one text message that promoted the sale of Defendant's goods or services before 8:00 a.m. and after 9:00 p.m. in the recipient's time zone. Each such text message

constituted a telephone solicitation call within the meaning of the TCPA and its implementing regulations. Neither Plaintiff not any other member of the After-Hours Class provided Defendant prior express written consent to receive such text messages.

63.    Defendant's transmission of more than one text message solicitation after 9:00 p.m. and before 8:00 a.m. within any 12-month period to Plaintiff's 3075 Number and to each After-Hours Class member's cellular telephone number, as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(c)(5) and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(1) and 47 C.F.R. § 64.1200(e).

64.    As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(1) and 47 C.F.R. § 64.1200(e), Plaintiff and all After-Hours Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

65.    As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder, including but not limited to 47 C.F.R. § 64.1200(c)-(f) and 47 C.F.R. § 64.1200(e), Plaintiff and all After-Hours Class members are also entitled to, and do seek, an award of statutory damages of up to $500.00 (or up to $1,500.00 for any willful or knowing violations) for each such violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

### THIRD CLAIM FOR RELIEF

**Violation of the TCPA, 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(2)**
**(On Behalf of Plaintiff and the DNC List Class Members Against Defendant)**

66.    Plaintiff incorporates by reference paragraphs 1-55 as if fully stated herein.

67.     Plaintiff and each member of the DNC List Class received, within any 12-month period, more than one text message that promoted the sale of Defendant's goods or services at a time more than 30 days after Plaintiff and each DNC List Class member had registered their respective phone numbers with the national Do-Not-Call Registry. Each such text message constituted a telephone solicitation call within the meaning of the TCPA and its implementing regulations. Neither Plaintiff not any other member of the DNC List Class provided Defendant prior express written consent to receive such text messages.

68.     Defendant's transmission of more than one text message solicitation within any 12-month period to Plaintiff's 3075 Number and to each DNC List Class member's cellular telephone number, as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(c)(5) and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e).

69.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiff and all DNC List Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

70.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiff and all DNC List Class members are also entitled to, and do seek, an award of statutory damages of up to $500.00 (or up to $1,500.00 for any willful or knowing violations) for each such violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amanda Lundbom prays for relief and judgment in favor of herself and the members of the proposed Classes, as follows:

A.      Statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the ATDS Class for each of Defendant's violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);

B.      Statutory damages of $500.00 (or up to $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the After-Hours Class for each of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(1) and 47 C.F.R. § 64.1200(e), pursuant to 47 U.S.C. § 227(c)(5)(B);

C.      Statutory damages of $500.00 (or up to $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the DNC List Class for each of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), pursuant to 47 U.S.C. § 227(c)(5)(B);

D.      Injunctive relief prohibiting such violations of the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A) and 47 U.S.C. § 227(c)(5)(A);

E.      An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and

F.      An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the Classes proposed herein and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the law firms representing Plaintiff as counsel for the Classes.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Classes, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

RESPECTFULLY SUBMITTED AND DATED this 19th day of December, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Jennifer Rust Murray, OSB #100389
Jennifer Rust Murray, OSB #100389
Email: jmurray@terrellmarshall.com
Beth E. Terrell*
Email: bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Frank S. Hedin*
Email: fhedin@hedinhall.com
David Hall*
Email: dhall@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Ste 900
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801

* *Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiff and the Proposed Classes*