Jennifer Rust Murray, OSB #100389
Email: jmurray@terrellmarshall.com
Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@terrellmarshall.com
Adrienne D. McEntee
Email: amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603

Frank S. Hedin, *Admitted Pro Hac Vice*
Email: fhedin@hedinhall.com
David W. Hall
Email: dhall@hedinhall.com
HEDIN HALL LLP
1395 Brickell Ave, Ste. 900
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AMANDA LUNDBOM, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>SCHWAN'S HOME SERVICE, INC.; and SCHWAN'S COMPANY,<br><br>        Defendants. | NO. 3:18-cv-02187-SI<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE "EXPRESS WRITTEN CONSENT" DEFENSE TO PLAINTIFF'S FIRST CLAIM FOR RELIEF**<br><br>Honorable Michael H. Simon<br><br><u>CLASS ACTION</u> |

## **TABLE OF CONTENTS**

I.  INTRODUCTION.................................................................................................................3

II.  BACKGROUND................................................................................................................5

III.  APPLICABLE LEGAL STANDARD........................................................................11

IV.  ARGUMENT .................................................................................................................12

    A.  Defendant's Sent Dozens of "Advertisements" and "Telemarketing" Texts to the 3075 Number During the Pertinent Post-October 16, 2013 Time Period.............................13

    B.  Defendant Lacked Plaintiff's "Express Written Consent," as a Matter of Law, to Send "Advertisements" or "Telemarketing" Messages to the 3075 Number ......................14

V.  CONCLUSION ...............................................................................................................22

Plaintiff Amanda Lundbom respectfully moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the first affirmative defense asserted by Defendants Schwan's Home Service, Inc. and Schwan's Company (collectively, "Defendant" or "Schwan's") in its operative Amended Answer (ECF No. 25 at 8-9 ("express written consent")) to Plaintiff's first claim for relief (for violation of 47 U.S.C. § 227(b)(1)(A)(iii)) alleged in the Class Action Complaint (ECF No. 1).[1]

## I.    INTRODUCTION

In this consumer class action, Plaintiff alleges Defendant used an "automatic telephone dialing system" (or "ATDS") to transmit unsolicited text-message advertisements to her cellular device and the cellular devices of numerous other similarly-situated consumers across the country, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.  The operative Class Action Complaint (ECF No. 1 ("Complaint" or "Compl.")) alleges three claims for relief on behalf of Plaintiff and a putative class of others similarly situated.

At the outset of this case, Defendant said it had a silver-bullet affirmative defense to this litigation: Plaintiff had expressly consented in writing to be bombarded with its digital junk mail while placing an order for frozen food on the Schwans.com website on May 5, 2018.  And on that basis, Defendant asked the Court to put this entire case on ice (other than discovery pertaining to its consent-based defenses to Plaintiff's individual claims) pending resolution of an early motion for summary judgment that it very confidently claimed would dispose of Plaintiff's entire case.  The Court adopted Defendant's proposal and bifurcated discovery accordingly.

---

[1]     This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 5,108 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Now that the "consent" phase of discovery has closed, the undisputed facts (from Defendant's own records) confirm, as a matter of law, that Defendant lacks and always has lacked Plaintiff's "express written consent" to receive Defendant's autodialed advertisements and telemarketing messages. This is because Defendant never even *asked* for Plaintiff's permission to send her advertisements or telemarketing messages in the first place.

None of the material facts are in dispute. It is undisputed that Plaintiff placed an order for frozen chicken on May 5, 2018 at Schwans.com. The appearance and functionality of this webpage, as it existed circa May 2018, is also undisputed – including that the webpage featured a check box alongside a disclosure statement pertaining to text messages, that this checkbox was prechecked when Plaintiff arrived on the page (as it was for all visitors), that Plaintiff did not click the pre-checked box to uncheck it prior to submitting her order on the page, and that the disclosure statement alongside the checkbox said nothing whatsoever about advertisements or telemarketing messages (instead referencing only "delivery notifications, important updates, and program news," quintessential examples of informational as opposed to advertising messages). Based on these undisputed facts, Plaintiff plainly did not – as a matter of law – "sign" a "written agreement" that clearly authorize[d]" Defendant to send her "advertisements or telemarketing messages using an automatic telephone dialing system" based merely on the fact that she placed an order on the Schwans.com website on May 5, 2018 without unchecking a box that pertained entirely to informational text messages.

Because the undisputed facts foreclose Defendant's ability to establish its first affirmative defense ("express written consent") to Plaintiff's first claim for relief (violation of the TCPA's autodialer restrictions, 47 U.S.C. § 227(b)(1)(A)(iii)) as a matter of law, the Court should enter

summary judgment in favor of Plaintiff and against Defendant on Defendant's first affirmative defense asserted in its operative Amended Answer.

## II.      BACKGROUND

As a threshold matter, the parties have stipulated (for all purposes in the case, except certain limited circumstances described in the stipulation) that "the records of [Defendant] regarding Plaintiff's creation of an account and placement of an order with Schwan's shall  be deemed  to accurately reflect that on May 5, 2018, Plaintiff (1)created a Schwan's account on the Schwan's website using her mobile device and Facebook login credentials on May 5, 2018 with the checkbox next to the text message disclosure statement checked, and (2) placed an order on Schwan's  website using her  mobile device."  (ECF No. 43 at 2.)

Plaintiff subscribes to and is the customary user of a telephone number assigned to cellular telephone service, the last four digits of which are "3075" (hereinafter the "3075 Number").  *See* Transcript of Deposition of Amanda Lundbom ("Lundbom Depo. Tr."), at 71:15-21; *id.*, Ex. 5 at 1-14 (Bates LUNDBOM_001606-001619) (AT&T cell phone transmission records for the 3075 Number reflecting the transmission of Defendant's text messages sent to the 3075 Number and Plaintiff's receipt of same).)

Pursuant to the parties' stipulation referenced above, there is no dispute that Defendant's records reflect that Plaintiff registered with the Schwans.com website and placed an order using her cell phone on May 5, 2018, via the webpage depicted below:

(Pearthree Depo. Tr., Ex. 6 at 1 (Bates SHS000057); *see also id.* at 2 (Bates SHS000020).)

When accessed by a consumer using a computing device, the entire page shown above would not typically have fully displayed on a single screen of such device. (*See* Pearthree Depo. Tr. at 176:2-18 (referencing Ex. 6 at 2 (Bates SHS000020).)  This would have been especially true for consumers such as Plaintiff who accessed the page on the screen of a mobile device. (*See* Transcript of Deposition of Paul Griebel ("Griebel Depo Tr."), at 8:12-9:8 (referencing Ex. 6 at 2 (Bates SHS000020)); *see also* Pearthree Depo. Tr. at 176:2-18.)  Thus, upon loading the page, the "complete registration" button at the bottom of the page would not have been visible to Plaintiff on the screen of her Galaxy S8 mobile device without scrolling down on the page until the button appeared.  (*See* Lundbom Depo. Tr. at 39:13-40:11 (referencing Galaxy phone as of May 5, 2018).)  Upon scrolling down on the page to the point at which the "complete registration" button would have appeared, the page would have appeared as follows, without the text below the button visible to the consumer (as depicted on a screenshot of the page taken by Defendant using a desktop computer):



(Pearthree Depo. Tr., at 56:3:20 (referencing Ex. 6 at 3 (Bates SHS000051).)

Over the period of time that the page shown above was accessible to the public on Schwans.com, including on May 5, 2018, when Plaintiff visited the page, the page was programmed by Defendant such that, whenever a consumer visited the page, both of the two checkboxes towards the bottom of the page were checked by default (i.e., "pre-checked"). (*Id.* at 50:1-19 (referencing Ex. 6 at 1 (Bates SHS000057).)  The text alongside the second of the two pre-checked checkboxes appeared as follows:



☑ Stay connected - Receive delivery notifications, important updates and program news sent straight to your phone.

You agree and consent via your electronic signature by clicking the check box to receive calls at the provided number which will deliver automated, live and/or prerecorded messages or text messages by or on behalf of Schwan's Home Service. This agreement is not entered into as a term or requirement of purchase. You will receive recurring messages. Msg&Data Rates May Apply. Mobile Terms: schwans.com/tc. Schwan's Privacy Policy: schwans.com/privacy. Reply HELP for help. Reply STOP to cancel.

(*Id.*; *see also id.* at 52:22-53:19.)  Had a visitor to the page clicked the check box upon arriving at the page, the checkbox would have become unchecked. (*Id.* at 53:20-54:11.)

Defendant's records reflect that, on May 5, 2018, Plaintiff clicked the "complete registration" button at the bottom of the page without clicking either of the two pre-checked check boxes, including the one shown above pertaining to calls and text messages concerning "delivery notifications, important updates and program news."  (*See id.* at 20:24-22:1.)  At no time, either on the registration page shown above or otherwise, did Defendant ask Plaintiff for her permission or consent to be sent advertisements or telemarketing messages to her 3075 Number via an automatic telephone dialing system. (*See id.* at 54:12-55:21.)

Schwan's records reflect that, immediately after Plaintiff hit the "complete registration" button at the bottom of the registration page shown above, Schwan's sent a text message to Plaintiff's 3075 Number welcoming her to Schwan's text messaging program, thanking her for joining it, and advertising the commercial availability of "this week's deals" for food products

(which she had just gotten done purchasing), sold by Schwan's on its website, as well as a link to purchase such goods, a copy of the contents of which is shown below:



(Pearthree Depo Tr., Ex. 4 (Bates SHS000014.)  Over the following seven months, Defendant sent Plaintiff at least thirty-six (36) additional text messages, pursuant to the same text-message program in which Plaintiff became enrolled on May 5, 2018 in connection with her order and registration on Schwans.com via her mobile device, each one of which also advertised the commercial availability of Defendant's food products in an effort to sell such products to Plaintiff.  (*See* Lundbom Depo. Tr., at 39:13-24 & Ex. 3 at 1-25 (Bates LUNDBOM_000043-000067 (screenshots of text messages Defendant sent to and Plaintiff received at the 3075 Number)); *id.*, Ex. 5 at 1-14 (Bates LUNDBOM_001606-001619 (cell phone transmission records reflecting Defendant's text messages received by Plaintiff at 3075 Number)).)  Examples of these additional text messages sent to Plaintiff's 3075 Number are depicted below:



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE "EXPRESS WRITTEN CONSENT" DEFENSE TO PLAINTIFF'S FIRST CLAIM FOR RELIEF - 9
CASE NO. 3:18-CV-02187-SI

(Pearthree Depo Tr., Ex. 4 (Bates SHS000014-000017 (reflecting 37 messages that Defendant sent to Plaintiff's 3075 Number)).)

On December 19, 2018, Plaintiff initiated this action with a Class Action Complaint, alleging three claims for violation of the TCPA against Defendant. (ECF No. 1.)  In claim one of the Complaint, Plaintiff alleges that Defendant used an "automatic telephone dialing system" to transmit at least one "advertising" or "telemarketing" text message to her cellular telephone number, the 3075 Number, without her prior "express written consent" in violation of the TCPA, 47 U.S.C. § 227(b)(l)(A).

On March 1, 2019, Defendant filed the operative Amended Answer and Affirmative Defenses ("Amended Answer") to the Complaint, asserting, inter alia, the affirmative defense of "express written consent" to Plaintiff's first claim for relief under the TCPA, which states in pertinent part:

> Plaintiff gave Defendants prior express written consent and/or prior express invitation or permission for any text messages sent by Defendants when, among other things, she created an account with, and provided her cellular telephone number to, Defendants via the Schwan's website on or about May 5, 2018.  As such, Plaintiff's claims are barred in whole or in part.

(ECF No. 25 at 8-9 (emphasis added).)[2]

---

[2]    "Prior express invitation or permission" (referenced in Defendant's first affirmative defense) and "established business relationship" (at issue in Defendant's third affirmative defense) only serve as defenses to claims concerning the transmission of calls or texts in alleged violation of the TCPA's time-of-day restrictions and do-not-call registry provisions pursuant to 47 U.S.C. § 227(c)(5). *See* 47 C.F.R. § 64.1200(c) (only subjecting calls or texts that constitute "telephone solicitations" to the TCPA's time-of-day and do-not-call registry provisions and governing regulations); *see also* 47 U.S.C. § 227(a)(4)(A)-(B) & 47 C.F.R. § 64.1200(f)(14)(i)-(ii) (excluding from the definition of "telephone solicitation" any calls or messages "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship").  In this Motion, Plaintiff seeks summary judgment solely on Defendant's first affirmative defense of "express written consent" to claim one of Plaintiff's Complaint, for violation of 47 U.S.C. § 227(b)(1)(A)(iii) – a claim for which neither "prior express invitation or permission" nor "established business relationship" is available as a defense, *see id.* § 227(c)(6) ("The provisions of this subsection [(c)] shall not be construed to permit a communication prohibited by subsection (b)").  Accordingly, neither "prior

III.    APPLICABLE LEGAL STANDARD

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case. *Id*. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

---

express invitation or permission" nor "established business relationship" will be addressed further in this motion.

## IV.   ARGUMENT

In claim one of the Complaint, Plaintiff alleges Defendant transmitted "advertisements" or "telemarketing" messages via an ATDS to the 3075 Number (a telephone number assigned to cellular telephone service) in violation of the TCPA's autodialing restrictions. (ECF No. 1 at 5-10, 16-17; Compl. ¶¶ 17-35, 56-60.)

Generally speaking, as it related to claim one, the TCPA prohibits companies like Schwan's from initiating any call or text message to a consumer's cellular telephone number, by way of an "automatic telephone dialing system" ("ATDS"), <u>without first obtaining the consumer's prior express consent to receive such text messages</u>. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *see also Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 952 (9th Cir. 2009) ("[A] text message is a 'call' within the meaning of the TCPA.").[3]  "Express consent is consent that is clearly and unmistakably stated," *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2019), and it is well established in the Ninth Circuit that "'express consent' is an affirmative defense to a claim brought under a provision of the TCPA dealing with unsolicited telephone calls, and that the defendant bears the burden of proving such consent," *True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 931 (9th Cir. 2018).

Until to October 16, 2013, Defendant needed only Plaintiff's "express consent" prior to delivering "advertisements" or "telemarketing" text messages via an ATDS to her 3075 Number. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 (1992).  However, since October 16, 2013, Defendant has been required to obtain

---

[3]     The TCPA imposes strict liability on a defendant in the amount of $500.00 per violation, 47 U.S.C. § 227(b)(3)(B), subject to trebling to $1,500.00 if the call or text was initiated in knowing or willful violation of the statute, *id*. § (b)(3).

Plaintiff's "express <u>written</u> consent" prior to delivering "advertisements" or "telemarketing" text messages via an ATDS to her 3075 Number.  *See* 47 C.F.R. 64.1200(a)(2) (emphasis added).

In this case, the undisputed facts demonstrate that (A) the text messages Defendant transmitted to the 3075 Number were all "advertisements" or "telemarketing" messages within the meaning of the TCPA, and (B) Defendant failed to obtain Plaintiff's "prior express written consent" prior to delivering such messages to her 3075 Number after October 16, 2013.

### A. Defendant's Sent Dozens of "Advertisements" and "Telemarketing" Texts to the 3075 Number During the Pertinent Post-October 16, 2013 Time Period

As a threshold matter, the text messages Defendant delivered to the 3075 Number between May 5, 2018 and December 16, 2018 (exampled of which are depicted above), via an ATDS (as alleged by Plaintiff in the Complaint), are quintessential examples of "advertisements" and/or "telemarketing" messages as defined by the TCPA and its implementing regulations.  *See* 47 C.F.R. § 64.1200 ("The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services."); 47 C.F.R. § 64.1200 ("The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.").

In each message, Defendant either advertised the commercial availability of its food products and/or its food delivery services, or encouraged, or at the very least sent the message for the purpose of encouraging, Plaintiff to purchase such goods or services from Defendant. (Pearthree Depo Tr., Ex. 4 (Bates SHS000014-000017 (reflecting 37 messages that Defendant sent to Plaintiff's 3075 Number)).)  For example:




(Pearthree Depo Tr., Ex. 4 (Bates SHS000016).) All 37 of the messages Defendant admits sending to Plaintiff were plainly "advertisements" and/or "telemarketing" within the meaning of the TCPA. *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context."); *see also, e.g., Meyer v. Bebe Stores, Inc.*, 2015 WL 431148 at *3 (N.D. Cal. Feb. 2, 2015); *Pimental v. Google Inc.*, No. C-11-02585-YGR, 2012 WL 691784 (N.D. Cal. Mar. 2, 2012); *Holtzman v. Turza,* 728 F.3d 682, 687 (7th Cir.2013); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 821 (8th Cir. 2015); *Margulis v. P & M Consulting, Inc.*, 121 S.W.3d 246, 251 (Mo. Ct. App. 2003).

In fact, Defendant has acknowledged as much in this litigation. (*See* ECF No. 35 at 2 (parties' Stipulated Protective Order stating: "This action concerns advertising or telemarketing texts placed to Plaintiff by or on behalf of Defendants.").)

### B.  Defendant Lacked Plaintiff's "Express Written Consent," as a Matter of Law, to Send "Advertisements" or "Telemarketing" Messages to the 3075 Number

Because all of Defendant's texts to the 3075 Number were transmitted after October 16, 2013, Defendant was required to obtain Plaintiff's "express written consent" prior to transmitting these messages to her 3075 Number via an ATDS (as alleged in the Complaint). *See* 47 C.F.R. §

64.1200(a)(2); *id.* § 64.1200(a)(1)(iii).   As explained below, the undisputed facts confirm that

Defendant cannot, as a matter of law, demonstrate that it obtained such "express written consent"

from Plaintiff prior to transmitting the messages in question.

The term "prior express written consent" is specifically defined in the TCPA's

implementing regulations as follows:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
>> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>>
>> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8).[4]

Thus, "'[p]rior express written consent' means a signed, written agreement that clearly

authorizes the caller to place telemarketing calls using an [automatic telephone dialing system]."

*Wakefield v. Visalus, Inc.*, No. 3:15-cv-1857-SI (D. Or.), *Final Jury Instructions*, April 12, 2019,

docket entry 283 at 14 (this Court's Final Jury Instructions at trial in class action alleging

---

[4]    The "signature of the person called" may be obtained by complying with the E-Sign Act, 15 U.S.C. § 7001. *See* 2012 FCC Order ¶ 58.

violations of the TCPA, instructing the jury concerning the definition of "telemarketing call" as follows in Instruction No. 18: "The term 'telemarketing call' means the making or initiation of a telephone call or message for the purpose of encouraging the purchase of or investment in property, goods, or services to any person. In determining whether a call is a telemarketing call, you should consider whether the purpose of the call was to encourage the purchase of or investment in property, goods, or services.").

Defendant contends in the first affirmative defense in its Amended Answer that it obtained the requisite "express written consent" from Plaintiff prior to transmitting the subject messages to her 3075 Number on the grounds that Plaintiff "created an account with, and provided her cellular telephone number to, Defendants via the Schwan's website on or about May 5, 2018."  (ECF No. 25 at 8-9 (emphasis added).)  Nothing could be further from the truth.

The Schwans.com order and registration page utilized by Plaintiff on May 5, 2018 could not possibly, even if Plaintiff had wanted it to, authorize Defendant to place telemarketing texts via an ATDS to the 3075 Number. The page made no mention of telemarketing or advertising at all. The only mention of automated text messages alongside the pre-checked box on the page concerns those containing "delivery updates, important updates, and program news" – in other words, informational texts, not the advertising and telemarketing texts that Schwan's sent to Plaintiff.  This order page was thus part of a "bait-and-switch" scheme in which Defendant, rather than disclosing the true nature of the text messages that would be sent to consumers failed to uncheck the box, disclosed the texts as things they plainly were not (delivery notifications, important updates, and program news) – for the transparent purpose of increasing the size of its text-message marketing program and thus the formidability of its brand.   Under the

circumstances, Defendant could not possibly have obtained Plaintiff's "express written consent" to receive advertising and telemarketing messages.

This conclusion is confirmed by the provisions of the statutory scheme. First, Defendant's records plainly fail to evidence an agreement "bearing the signature of [Plaintiff]" that "clearly authorize[d] [Defendant] to deliver or cause to be delivered to [Plaintiff] advertisements or telemarketing messages using an automatic telephone dialing system" to her 3075 Number because neither the word "advertising" nor the word "telemarketing," *see* 47 C.F.R. § 64.1200(f)(8), nor any variation or synonym of either of the foregoing, appears anywhere on the Shwans.com webpage that Plaintiff used to place an order on May 5, 2018, as shown above in the screenshots reflecting the page in question, *see* Pearthree Depo Tr., Ex. 4 (Bates SHS000014-000017). Accordingly, the web-based form depicted above was incapable of generating records that evidence Plaintiff's (or any other consumer's) "express written consent" to receive Defendant's "advertisements" and "telemarketing" messages, as a matter of law. *See* 47 C.F.R. § 64.1200 (f); *see also, e.g., Thomas v. Abercrombie & Fitch Co.*, 301 F. Supp. 3d 749, 758-759 (E.D. Mich. 2018) (denying summary judgment because, per FCC prior express written consent requirement, business sending autodialed telemarketing messages "is required to provide the necessary disclosures" under 47 C.F.R. § 64.1200(f)(8) and cannot simply "rely on disclosures housed on [a] promotional website"); *Allied v. SCI Direct, Inc.*, 2017 WL 2957883, at *4-*5 (M.D. Tenn. 2017) (denying summary judgment because "'[t]he FCC's regulations for telemarketers now require a more specific type of consent—namely, that the called party consents, in writing, to being called by an auto-dialer.'"); *Sullivan v. All Web Leads*, 2017 WL 2378079, at *6 (N.D. Ill. 2017) (holding that intake form did not provide "clear and conspicuous" disclosures required by the FCC to constitute prior express written consent for automated

telemarketing calls); *Barrera v. Guaranteed Rate, Inc.*, 2017 WL 4837597, at *3 (N.D. Ill. 2017) (no "express written consent" where "the placement of the disclosures and the use of a tiny font made it unlikely that Plaintiff knew, when he clicked on the quote button that he was actually opening the door to a barrage of autodialed telemarketing calls to his cell phone," explaining that "[t]he TCPA requires that the consent agreement be clear and conspicuous").[5]

Second, even if the disclosure statement  on the order page Plaintiff submitted on May 5, 2018 had referenced "advertisements" or "telemarketing" messages, Plaintiff's submission of an order on that page still did not evidence a "writing, bearing the signature of [Plaintiff]," "clearly authoriz[ing]" Defendant to send her any type of such messages, *see* 47 C.F.R. § 64.1200(f)(8), because the box pertaining to text messages was pre-checked on the order and registration page. Thus, Defendant's records showing that Plaintiff merely submitted the form with the box left checked – without affirmatively affixing a "signature" that is logically associated with an agreement to receive text messages – fails to establish her "express written consent" to receive text messages (of any type) as a matter of law.  *See, e.g., See, e.g., Snyder v. iCard Gift Card, LLC*, No. 0:15-CV-61718-WPD, 2016 WL 7507994, at *6 (S.D. Fla. May 16, 2016) (merely inputting cell phone number "on the requested field for cell phone, and clicking 'Register,' with a checkmark remaining in the checkbox," held insufficient to entitle defendant to summary judgment on "express written consent" defense because "the consent box is checked off by

---

[5]        Thus, based on the plain language of the webpage itself, Plaintiff's submission of an order on the Schwans.com website on May 5, 2018 could be deemed, at the very most, evidence of Plaintiff's consent to receive "delivery notifications, important updates, and program news" messages sent by Defendant via an ATDS to her 3075 Number. *See id.*  Each of the 37 messages that Defendant actually delivered to Plaintiff was plainly an advertisement or telemarketing message (discussed above) and thus fell well outside the scope of the purely informational categories of messages advertised on the page. But in any event, as discussed further below, Defendant lacks evidence of Plaintiff's consent to receive any type of text messages by virtue of the order page having been submitted with the pre-checked box left checked.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE "EXPRESS WRITTEN CONSENT"
DEFENSE TO PLAINTIFF'S FIRST CLAIM FOR RELIEF - 18
CASE NO. 3:18-cv-02187-SI

default when the 'New Customer Account Set-Up' webpage loads, so there is no evidence that Plaintiff affirmatively opted to receive any marketing messages from Defendant"). Again, Defendant's first affirmative defense fails as a matter of law.

Finally, even if Plaintiff's failure to uncheck a pre-checked box on a webpage like the one at issue here could generally be considered evidence of a "signed, written agreement" by Plaintiff that "clearly authorizes" whatever is disclosed alongside that pre-checked box, any such generally applicable rule would not apple in this case. In fact, it would be the exact opposite. The disclosure statement in question, which appeared on the order page on Schwans.com on May 5, 2018 when Plaintiff placed her order, appeared as follows:



☑ Stay connected - Receive delivery notifications, important updates and program news sent straight to your phone.

You agree and consent via your electronic signature by clicking the check box to receive calls at the provided number which will deliver automated, live and/or prerecorded messages or text messages by or on behalf of Schwan's Home Service. This agreement is not entered into as a term or requirement of purchase. You will receive recurring messages. Msg&Data Rates May Apply. Mobile Terms: schwans.com/tc. Schwan's Privacy Policy: schwans.com/privacy. Reply HELP for help. Reply STOP to cancel.

(Pearthree Depo. Tr., Ex. 6 at 1 (Bates SHS000057); *see also id.* at 52:22-53:19.) As shown above, the disclosure statement appearing alongside the pre-checked box on the order page informed Plaintiff, in pertinent part, that "<u>by clicking the checkbox</u>," "[y]ou agree and consent via your electronic signature" to "receive calls at the provided number[,]" including "text messages and text alerts" containing "delivery notifications, important updates, and program news." (*See id.*) But because the box was pre-checked on the page for Plaintiff and all other consumers who navigated through the page, "clicking the checkbox" on the page would, according to Defendant's own disclosure statement, have caused the box to become unchecked. (*Id.* at 53:20-54:11.) Thus, Plaintiff's submission of the Schwans.com order page with the box left pre-checked would at most evidence a "signed writing" between Plaintiff and Defendant in

which Defendant was "clearly [prohibited]" from delivering any type of autodialed text messages, including the informational variety described therein, to her telephone number. And on the flip side of the coin, the only consumers who navigated through the Schwans.com order page who could possibly be deemed to have "clearly authorize[d]" Defendant's transmission of any type of autodialed text messages to their cellular telephone numbers, even "delivery notifications, important updates, and program news," were those consumers who submitted the page with the box <u>unchecked</u>, not checked. In this case, the undisputed evidence in the record confirms that Plaintiff submitted the page with the pre-checked box left in its original, checked position, confirming that she did not "click[] the check box" – and that she therefore did not "sign" anything "clearly authoriz[ing]" Defendant to send her even the informational text messages described in the disclosure statement alongside the pre-checked box. Yet again, Defendant's first affirmative defense of "express written consent" fails as a matter of law.

Finally, Plaintiff's mere "provi[sion] [of] her cellular telephone number to Defendants" (*see* ECF No. 25 at 8-9), via the Schwan's website or otherwise, is plainly insufficient to demonstrate Plaintiff's "express written consent" within the meaning of the TCPA. *See Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *5 (N.D. Cal. Sept. 11, 2015) ("For non-telemarketing and non-advertising calls, express consent can be demonstrated by . . ., in the absence of instructions to the contrary, by giving his or her wireless number to the person initiating the autodialed or prerecorded call."). Thus, Plaintiff's provision of the 3075 Number to Defendant is at most evidence of her "express consent" to receive non-advertising and non-telemarketing – i.e., purely informational – text messages (which the messages in question were most certainly not). *See id.*

Tellingly, Defendant appears to have recently implemented a new, revised disclosure pertaining to text messages as a remedial measure in response to this lawsuit.  Defendant's new disclosure language, appearing alongside an <u>unchecked</u> box, states as follows:

> **By checking this box** and clicking the "Create an Account" button below, I verify this is my mobile or residential phone number and consent to receive text or phone messages via automated technology to this number **regarding product offers or services** by or on behalf of Schwan's Home Service, Inc. and its affiliates. I understand that consent is not required to make a purchase. I also agree to the <u>Terms and Conditions</u> and the <u>Privacy Policy</u>. Message and Data rates may apply.

(*See* Hedin Decl., Ex. D (screenshot of revised version of page, referencing "product offers or services" sent via ATDS).)

The undisputed facts in the record demonstrate that Defendant's order and registration page on Schwans.com on uniformly failed, as a matter of law, to yield records evidencing anyone's (including Plaintiff's) "express written consent" to receive "advertisements" or "telemarketing" messages sent by Defendant via an ATDS during the relevant time period, including on May 5, 2018 when Plaintiff navigated through the page in order to place her first (and last) order with Defendant.  Accordingly, the Court should enter summary judgment against Schwan's and in favor of Plaintiff on Schwan's first affirmative defense ("prior express written consent") to claim one of Plaintiff's Complaint. *See, e.g., Buslepp v. B&B Entertainment, LLC*, No. 12-cv-60089, ECF No. 37 at 9-10 (S.D. Fla. Oct. 5, 2012) (granting Plaintiff summary judgment on Defendant's affirmative defense of "prior express consent").

## V.    CONCLUSION[6]

For the foregoing reasons, the Court should enter summary judgment against Defendant and in favor of Plaintiff on the Amended Answer's first affirmative defense to Plaintiff's first claim for relief pursuant to Federal Rule of Civil Procedure 56.

RESPECTFULLY SUBMITTED AND DATED this 3rd day of August, 2019.

HEDIN HALL LLP

By:  /s/ Frank S. Hedin, *Admitted Pro Hac Vice*
Frank S. Hedin, *Admitted Pro Hac Vice*
Email: fhedin@hedinhall.com
David Hall
Email: dhall@hedinhall.com
1395 Brickell Avenue, Ste 900
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801

---

[6]    The Court should hold that the Defendant, having affirmatively moved for summary judgment on the merits of Plaintiff's individual claims prior to the Court's issuance of a decision on whether to certify a class, waived its right to enforce the rule against one-way intervention, which generally prohibits plaintiffs from seeking merits determinations prior to the certification of a class and prior to the dissemination of pre-trial notice to the  certified class. *See London v. Wal–Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003) ("'One-way intervention' occurs when the potential members of a class action are allowed to 'await ... final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests.'") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)). To the extent the Court finds that Defendant has waived the rule against one-way intervention, then Plaintiff requests that the Court decide the instant motion forthwith. *See, e.g., Darrington v. Assessment Recovery of Washington, LLC*, No. C13-0286-JCC, 2014 WL 3858363, at *4 (W.D. Wash. Aug. 5, 2014) ("While courts have discretion to rule on a summary judgment motion before class certification and notification, under certain circumstances, they generally exercise that discretion only when a defendant consents to the procedure or otherwise waives their objection to a pre-notification ruling.").  However, to the extent the Court finds that Defendant has not waived its right to enforce the rule against one-way intervention by moving for summary judgment (pursuant to a sequence that it requested for both discovery and filing dispositive motions on the merits of individual claims) prior to a decision on class certification, then in that event Plaintiff respectfully requests that the Court defer ruling on this motion until (1) after the Court has issued a decision on Plaintiff's forthcoming motion for class certification, and (2) if a class is certified, after Plaintiff has disseminated pre-trial notice to the certified class.

Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, OSB #100389
Email: jmurray@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email: amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiff and the Proposed Classes*

CERTIFICATE OF SERVICE

I, Jennifer Rust Murray, hereby certify that on August 3, 2019, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification to

all registered CM/ECF users:

> Kristen G. Hilton, OSB #151950
> Email: khilton@sussmanshank.com
> Kimberlee M. Petrie Volm, OSB #114906
> Email: kpetrievolm@sussmanshank.com
> SUSSMAN SHANK LLP
> 1000 SW Broadway, Suite 1400
> Portland, Oregon 97205-3089
> Telephone: (503) 227-1111
> Facsimile: (503) 248-0130
>
> Thomas M. Schehr, *Admitted Pro Hac Vice*
> Email: tschehr@dykema.com
> Andrew J. Kolozsvary, *Admitted Pro Hac Vice*
> Email: akolozsvary@dykema.com
> Matthew M. Dybas
> Email: mdybas@dykema.com
> DYKEMA GOSSETT
> 400 Renaissance Center
> Detroit, Michigan 48243
> Telephone: (313) 568-6800
> Facsimile: (855) 255-1528
>
> *Attorneys for Defendants*

DATED this 3rd day of August, 2019.

> TERRELL MARSHALL LAW GROUP PLLC
>
>
> By:   /s/ Jennifer Rust Murray, OSB #100389
>       Jennifer Rust Murray, OSB #100389
>       Email: jmurray@terrellmarshall.com
>       936 North 34th Street, Suite 300
>       Seattle, Washington 98103-8869
>       Telephone: (206) 816-6603
>       Facsimile: (206) 319-5450
>
> *Attorneys for Plaintiff and the Proposed Classes*